IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROLINA LOZANO VELA, as Wrongful Death
Personal Representative of the Estate of
Sylvia Vela, Deceased,

    Plaintiff,

v.                                                                                             No. 23-cv-00363-JCH-GBW

STERIGENICS U.S., LLC, SOTERA HEALTH
HOLDINGS, LLC, SOTERA HEALTH LLC,
and SOTERA HEALTH CO.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on *Sterigenics U.S., LLC's Motion to Dismiss Count III ("Strict Liability") Pursuant to Rule 12(b)(6)* (ECF No. 5). Because Plaintiff Carolina Lozano Vela has made a plausible claim for strict liability for an abnormally dangerous activity, the Court will deny this motion.

**I.    BACKGROUND**

Ms. Vela's mother, Sylvia Vela, worked near a medical-instrument sterilization facility in Santa Teresa, New Mexico. (Compl. ¶ 33, ECF No. 1.) Defendant Sterigenics U.S., LLC ("Sterigenics") operated the Santa Teresa facility. (*Id.* ¶¶ 3, 13.) According to Ms. Vela, Sterigenics emitted ethylene oxide ("EO") from this facility. (*Id.* ¶¶ 9, 13.) Ms. Vela alleges that these emissions caused her mother's death. (*Id.* ¶ 35.)

Ms. Vela sued Sterigenics and its chain of parent companies, Sotera Health LLC, Sotera Health Holdings, LLC, and Sotera Health Company in state court. (*Id.* ¶¶ 3-6.) Her complaint included three counts—negligence, willful and wanton conduct, and strict liability—under the

1

New Mexico Wrongful Death Act. (*Id.* ¶¶ 36-56 (citing NMSA 1978, §§ 41-2-1 to -3 (2001)).) After removing the case to this Court, Sterigenics moved to dismiss Ms. Vela's strict-liability count for failure to state a claim upon which relief may be granted. (Def.'s Mot. 1, ECF No. 5.)

## II.  STANDARD

The federal pleading standard governs this motion. *Adams v. C3 Pipeline Constr., Inc.*, 30 F.4th 943, 972 n.13 (10th Cir. 2021). A court may dismiss an action if a complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). All facts and plausible inferences contained in the complaint must be construed in the light most favorable to the nonmoving party. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023).

"[L]egal conclusions can provide the framework of a complaint, [but] they must be supported with factual allegations." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1241 (10th Cir. 2013) (second alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept as true "all well-pleaded *facts*, as distinguished from conclusory allegations." *Adams*, 30 F.4th 943, 972 (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017)). After disregarding conclusory allegations, a court will "look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim." *Matney*, 80 F.4th at 1145 (quoting *Brooks v. Mentor Worldwide, LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). In sum, dismissal under Rule 12(b)(6) is appropriate if the pleaded "factual allegations [are not] enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As a general rule, facts must come from the complaint alone on a Rule 12(b)(6) motion to dismiss. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014). If "matters outside the pleadings are presented to and not excluded by the court," then a

court must convert the motion into one for summary judgement. Fed. R. Civ. P. 12(d). The court has broad discretion to accept or reject materials beyond the pleadings. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). And the court need not convert the motion to one for summary judgment if the court considers matters of which a court may take judicial notice or documents that are referred to in the complaint, indisputably authentic, and central to the plaintiff's claim. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (citing *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005)).

### III.   ANALYSIS

This case invokes the Court's diversity jurisdiction, so the Court applies New Mexico law. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017). For strict-liability claims for an abnormally dangerous activity, New Mexico follows the Restatement (Second) of Torts. *See Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶¶ 18, 20-21, 73 P.3d 215 (citing Restatement (Second) of Torts §§ 519-520 (Am. L. Inst. 1977)). The Restatement provides the general rule for strict liability in tort for abnormally dangerous activities:

> (1) [o]ne who carries on an abnormally dangerous activity is subject to liability for harm . . . resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

*Id.* ¶ 20 (alterations in original) (quoting Restatement § 519).

The Restatement's next section lists six factors for a court to consider when determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;

    (c) inability to eliminate the risk by the exercise of reasonable care;

    (d) extent to which the activity is not a matter of common usage;

    (e) inappropriateness of the activity to the place where it is carried on; and

    (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.* (quoting Restatement § 520)). As the New Mexico Court of Appeals explained,

> The [Restatement] commentary explains that the court must consider each factor, apportioning weight to each in accordance with the evidence. While each factor need not be present, "ordinarily several of them will be required for strict liability . . . . [although] it is not necessary that each of them be present, especially if others weigh heavily."

*Id.* (second alteration in original) (quoting Restatement § 520 cmt. f) (citing Restatement § 520 cmts. f & *l*). At bottom, according to the New Mexico Court of Appeals' application of the Restatement, "[t]he essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even . . . without the need of a finding of negligence." *Id.* (alterations in original) (quoting Restatement § 520 cmt. f).

    To survive Sterigenics's motion to dismiss, therefore, Ms. Vela must *plausibly* show that Sterigenics "carrie[d] on an abnormally dangerous activity." Restatement § 519. To assess whether she has made this showing, the Court will compare the allegations in her complaint against the factors in section 520 of the Restatement. Before doing so, however, the Court will address two threshold issues raised by Sterigenics.

    **A.    First Threshold Issue: Whether Strict Liability for an Abnormally Dangerous Activity Applies Beyond Blasting**

    Sterigenics describes how the doctrine of strict liability for an abnormally dangerous activity is "applied sparingly" in New Mexico. (Def.'s Mot. 8, ECF No. 5 (quoting *Verettto v. Williams Field Serv. Rocky Mountain Region Co.*, No. 99-cv-00121, 2000 WL 36739983, at *3

4

(D.N.M. May 2, 2000)).) Specifically, Sterigenics cites the committee commentary to the New Mexico Uniform Jury Instruction on strict liability for the assertion that "[t]here are no New Mexico cases on ultrahazardous activities, other than blasting, and, therefore, the instruction is limited to blasting situations." UJI 13-1627 NMRA cmt.

Predating this committee commentary, however, the New Mexico Court of Appeals rejected the argument that the doctrine was limited to blasting and explained that the doctrine's potential expansion depended on factual context. *See Apodaca*, 2003-NMCA-085, ¶ 19 ("Defendants argue that ultrahazardous activity should be limited to dynamite blasting, asserting that because our courts have refused to extend the doctrine beyond such cases, we should not do so here. However, this Court is not foreclosed from such a finding, if the facts warrant."); *see also Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 842 F. Supp. 475, 478 (D.N.M. 1993) (noting that New Mexico Supreme Court's statement that doctrine has been restricted to blasting "must be construed merely as an historical observation, not a substantive limitation on strict liability doctrine" (citing *Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶ 22, 827 P.2d 102)). Whether the facts warrant recognizing medical-equipment sterilization as an abnormally dangerous activity requires the development of the facts. Dismissal before discovery would thus be premature.

**B.     Second Threshold Issue: Whether Ms. Vela Failed to Plead that Negligence Is Inadequate and that Strict Liability Is Necessary**

Sterigenics asserts that Ms. Vela failed to plead that negligence is inadequate and that she must rely on strict liability. (Def.'s Reply 2, ECF No. 13.) Sterigenics is correct that, in broad terms, "[strict liability] is not to be imposed where negligence law provides an adequate remedy." *Apodaca*, 2003-NMCA-085, ¶ 16. As the New Mexico Court of Appeals noted, "where the "hazards of an activity can be avoided by being careful . . . , there is no need to switch to strict liability." *Id.* ¶ 17 (alteration in original) (quoting *Ind. Harbor Belt R.R. Co.*, 916 F.2d 1174, 1177

5

(7th Cir. 1990)). To support its assertion that Ms. Vela inadequately pled the need to rely on strict liability rather than negligence, Sterigenics makes three arguments.

First, Sterigenics cites to Ms. Vela's allegations that Sterigenics could have avoided harm by exercising reasonable care. For example, Ms. Vela alleges that her mother's death was "caused by the negligence of Defendants" arising out of Defendants' "[f]ail[ure] to correct the dangerous condition of the facility and premises from the known exposure of uncontrolled amounts of Ethylene Oxide being released" and "[n]egligent hiring, training, supervision and retention of Sterigenics employees." (Compl. ¶ 41(c), (e); Def.'s Reply 3-4 (citing other examples)).

But Ms. Vela's allegations of negligence have no bearing on whether she plausibly pled strict liability. "Under Federal Rule of Civil Procedure 8(d)(2) a party is permitted to set forth inconsistent statements either alternatively or hypothetically within a single count or defense, or in separate claims or defenses." 5 A. Benjamin Spencer, *Federal Practice and Procedure (Wright & Miller)* § 1283, Westlaw (database updated Apr. 2023). Thus Ms. Vela's allegations of negligence—although inconsistent with her strict-liability count—cannot detract from the plausibility of her claims that medical-sterilization is an abnormally dangerous activity.

Second, Sterigenics argues that "the exhaustive government regulation of EO shows that due care can produce reasonable safety, such that the operation of an EO sterilization facility is not inherently dangerous." (Def.'s Reply 4-5.) At this stage in the litigation, the Court declines to hold that the presence of exhaustive regulation is sufficient to defeat strict liability. After all, blasting—the archetypal abnormally dangerous activity—is subject to regulation. *See, e.g.*, Use of Explosives: General Requirements, 19.8.20.2028 NMAC. The Court will be able to better address arguments about the legal effect of regulation on the availability of strict liability with the aid of facts showing the defendants' compliance with regulation, the impact of regulation, and the like.

6

Third, Sterigenics argues that Ms. Vela failed to allege that the risk of harm from medical-equipment sterilization cannot be avoided with due care. (Def.'s Reply 6.) This argument amounts to saying that Ms. Vela failed to plead the third factor in the Restatement's explanation of an abnormally dangerous activity: the "inability to eliminate the risk by the exercise of reasonable care." Restatement § 520(c). But granting Sterigenics's motion to dismiss would not necessarily be warranted even if Ms. Vela failed to plead this third factor. The Restatement's commentary notes, "[I]t is not necessary that each [factor] be present, especially if others weigh heavily." *Id.* § 520, cmt. f. Thus if Ms. Vela plausibly pled the other five factors, then the Court would still deny Sterigenics's motion, because a complete factual record might show that the other five factors weigh heavily. The Court need not make such a holding, however, because Ms. Vela plausibly pleads all six Restatement factors.

C.  **Section 520 Factors**

Section 520 instructs a court to consider six factors to determine whether an activity is abnormally dangerous. *Id.* § 520. Ms. Vela's complaint plausibly shows all six.

1.  **Dangerous: Factors (a), (b) & (c)**

The first three factors show the activity's dangerousness. Excerpts from Ms. Vela's complaint that address these factors include the following (along with others):

- Defendants have reported emitting several tons of Ethylene Oxide per year from the Santa Teresa Plant through *controlled sources*, including sterilizer vacuum pumps, acid-water, scrubbers, and catalytic oxidizers. (Compl. ¶ 9.)

- Ethylene oxide is also used to sterilize equipment and plastic devices that cannot be sterilized by steam. Ethylene Oxide is genotoxic (i.e., it damages DNA) and is known to cause cancer, including lymphoma, leukemia, stomach cancer and breast cancer. (*Id.* ¶ 13.)

- Once released into the air, Ethylene Oxide can travel significant distances with air currents, and can remain in ambient air for over 200 days. Neither rain nor absorption into aqueous aerosols is capable of removing ethylene oxide from the atmosphere. (*Id.* ¶ 16.)

7

- In August 2018, the EPA published results from its 2014 National Air Toxics Assessment ("NATA") study. The study compiled evidence showing that due to Defendants' *reported* emissions of Ethylene Oxide, residents of Santa Teresa and surrounding locations are statistically significantly increased risk of developing cancer. (*Id.* ¶ 19.)

These allegations plausibly show that using EO to sterilize medical equipment creates a "high degree of risk of some harm to the person . . . of others." *See* Restatement § 520(a). So too, these allegations plausibly show that the "likelihood that the harm that results from" using EO to sterilize medical equipment "will be great." *See id.* § 520(b).

These allegations do not depend on EO being used excessively or without due care. Rather, they plausibly show that even though Sterigenics emitted EO through *controlled sources*, and even though Sterigenics *reported* its emissions, the emitted EO could travel through the air and cause cancer. Thus Ms. Vela has plausibly shown the third Restatement factor: the "inability to eliminate the risk by the exercise of reasonable care." *Id.* § 520(c).

### 2. Abnormal: Factors (d), (e) & (f)

The next three factors show the activity's abnormality. Excerpts from Ms. Vela's complaint that address these factors include the following (along with the excerpts above, and others):

- All residents of Doña Ana County are affected by Defendants' Ethylene Oxide emissions according to the NATA study. (Compl. ¶ 22.)

- The [State of New Mexico's] investigation included the collection and laboratory analysis of nineteen air samples. Every sample collected within the four-mile area around the Santa Teresa plant revealed concentrations of Ethylene Oxide far in excess of the EPA IUR level.[1] The testing results demonstrate the presence of Ethylene Oxide in the Santa Teresa community's ambient air at up to 96 times the EPA's IUR cancer risk level. (*Id.* ¶ 27.)

---

[1] According to the EPA, "Inhalation (IUR) is an estimate of the increased cancer risk from inhalation exposure to a concentration of 1 μg/m$^3$ for a lifetime. The IUR can be multiplied by an estimate of lifetime exposure (in μg/m$^3$) to estimate the lifetime cancer risk." *Basic Information About the Integrated Risk Information System*, U.S. EPA, https://www.epa.gov/iris/basic-information-about-integrated-risk-information-system (last visited Dec. 14, 2023).

- The only source of Ethylene Oxide emissions in the Santa Teresa area is the Sterigenics Plant. (*Id.* ¶ 30.)

- Defendants' use and emission of Ethylene Oxide is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, among schools, parks and other employment facilities. (*Id.* ¶ 53.)

The fourth Restatement factor asks courts to consider "the extent to which the activity is not a matter of common usage." Restatement § 520(d). The New Mexico Court of Appeals cited the Restatement's definition of common usage: "an activity 'customarily carried on by the great mass of mankind or by many people in the community.'" *Apodaca*, 2003-NMCA-085, ¶ 30 (quoting Restatement § 520 cmt. i). The court clarified this definition, however, noting that "[w]hat is customary activity in the community has come to encompass customary industrial activity throughout the country." *Id.* The court concluded its explanation of this factor by quoting an Arkansas case: "Thus, in order to satisfy this Restatement factor, 'the activity . . . [must be] uncommon in the circumstances in which it causes injury.'" *Id.* (alterations in original) (quoting *Johnson & Johnson v. First Nat'l Bank*, 594 S.W.2d 726, 731 (Ark. Ct. App. 1980)). That case, in turn, expanded on what it meant by "uncommon in the circumstances": "The familiar example is the blasting which takes place in the center of a city as opposed to a desolate mountainside." *Johnson & Johnson*, 594 S.W.2d at 731. Thus the fourth Restatement factor is related to the fifth: "Inappropriateness of the activity to the place where it is carried on." Restatement § 520(e).

So too, there is also a relationship between these factors and the sixth: the "extent to which its value to the community is outweighed by its dangerous attributes." *Id.* § 520(f). The Restatement commentary explains, "[The value to the community may outweigh the danger] when the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it." *Id.* § 520 cmt. k. The commentary continued with an example: "Thus the interests of a particular town whose livelihood depends upon such an activity as manufacturing cement may be

9

such that cement plants will be regarded as a normal activity for that community notwithstanding the risk of serious harm from the emission of cement dust." *Id.*

Ms. Vela alleges that sterilizing medical equipment with EO is uncommon in the Santa Teresa area. *See id.* § 520(d). She would have done more to show the fourth Restatement factor had she also alleged that EO sterilization is not "customary industrial activity throughout the country." *Apodaca*, 2003-NMCA-085, ¶ 30. Still, the Court holds that Ms. Vela has plausibly shown this factor given her other allegations plausibly showing that EO sterilization in the Santa Teresa is "uncommon in the circumstances"—not unlike blasting in a city center rather than a desolate mountainside. *Id.* (quoting *Johnson & Johnson*, 594 S.W.2d at 731). And in any event, a more comprehensive factual record will enable the Court to better assess whether EO sterilization is customary industrial activity throughout the country.

Ms. Vela's other allegations plausibly show that EO's airborne travel renders the sterilization facility's location inappropriate. Restatement § 520(e). The emissions (Ms. Vela alleges) increased the risk of cancer among Santa Teresa residents. To be sure, Sterigenics disputes Ms. Vela's allegation that the facility is in a densely populated residential area. Specifically, Sterigenics offers an aerial map showing that the facility is located near an airport in an industrial park. (Def.'s Mot. 2; Def.'s Reply 9.) The Court will be able to better determine the propriety of the facility's location after the parties bolster the record with facts showing, for example, how far EO travels, how long EO remains a threat to nearby areas, and whether other EO sterilization facilities are placed at similar distances to communities like Santa Teresa.

Finally, Ms. Vela plausibly shows that EO sterilization's dangerous attributes outweighed its value to Santa Teresa. Restatement § 520(f). Ms. Vela alleges that the facility's location and use of EO increased Santa Teresa residents' risk of developing cancer. And she alleges that the

Sterigenics plant was the only source of EO in the Santa Teresa area—she thus plausibly shows that Santa Teresa is not a "town whose livelihood depends upon" EO sterilization. *Id.* § 520 cmt. k.

### D. Conclusion

Ms. Vela has plausibly shown that the six Restatement factors for an abnormally dangerous activity apply to EO sterilization at Sterigenics's Santa Teresa facility. As a result, Ms. Vela has made a plausible claim that Sterigenics should be strictly liable for conducting an abnormally dangerous activity. *Matney*, 80 F.4th at 1145. "Whether strict liability should actually be imposed in this case is an issue awaiting further development of the record, requiring an evaluation of the six factors of section 520 of the Restatement." *Schwartzman, Inc.*, 842 F. Supp. at 479 (denying motion to dismiss strict-liability count).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that *Sterigenics U.S., LLC's Motion to Dismiss Count III ("Strict Liability") Pursuant to Rule 12(b)(6)* (**ECF No. 5**) is **DENIED**.

                                                                    _____
                                                                    SENIOR UNITED STATES DISTRICT JUDGE