## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**CAROLINA LOZANO VELA, as Wrongful Death**
**Personal Representative of the Estate of**
**Sylvia Vela, Deceased,**

     **Plaintiff,**

**v.**                                     **No. 23-cv-00363-JCH-GBW**

**STERIGENICS U.S., LLC, SOTERA HEALTH**
**HOLDINGS, LLC, SOTERA HEALTH LLC,**
**and SOTERA HEALTH CO.,**

     **Defendants.**

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on *Defendants Sotera Health LLC, Sotera Health Holdings, LLC, and Sotera Health Company's Motion to Dismiss Under FRCP 12(b)(2)* (ECF No. 21). Three defendants—Sotera Health LLC ("Health LLC"); Sotera Health Holdings, LLC ("Holdings LLC"); and Sotera Health Company ("Sotera Health") (collectively, the "Sotera Defendants")— argue that being subjected to the Court's jurisdiction would violate their constitutional rights. Because Plaintiff Carolina Lozano Vela has made a prima facie showing that the Court's exercise of jurisdiction over the Sotera Defendants comports with due process, the Court will deny the Sotera Defendants' motion.

## I.    BACKGROUND

Ms. Vela's mother, Sylvia Vela, worked near a medical-instrument sterilization facility in Santa Teresa, New Mexico. (Compl. ¶ 33, ECF No. 1.) Defendant Sterigenics U.S., LLC ("Sterigenics"), which is incorporated in Delaware with a principal place of business in Ohio, operated the Santa Teresa facility. (*Id.* ¶¶ 3, 13.) According to Ms. Vela, Sterigenics emitted

1

ethylene oxide ("EO") from this facility. (*Id.* ¶¶ 9, 13.) Ms. Vela alleges that these emissions caused her mother's death. (*Id.* ¶ 35.)

Ms. Vela sued Sterigenics in state court for three counts—negligence, willful and wanton conduct, and strict liability—under the New Mexico Wrongful Death Act. (*Id.* ¶¶ 36-56 (citing NMSA 1978, §§ 41-2-1 to -3 (2001)).) She also sued Sterigenics's parent companies, the Sotera Defendants. Sterigenics's sole member is Health LLC, Health LLC's sole member is Holdings LLC, and Holdings LLC's sole member is Sotera Health. (Decl. of Laura Wilson ¶¶ 5, 7, 9, Defs.' Ex. A, ECF No. 21-1.)

All Sotera Defendants are incorporated in Delaware. (*Id.* ¶¶ 6, 8, 10.) Their principal places of business are in Ohio. (*Id.*) After Sterigenics removed the case to this Court, the Sotera Defendants moved to dismiss for lack of personal jurisdiction. (Defs.' Mot. 1, ECF No. 21.)

## II.     STANDARD

When a defendant challenges the Court's exercise of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). In the preliminary stages of litigation, this burden is "light," and prior to trial, a "plaintiff need only make a prima facie showing of personal jurisdiction." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008). The plaintiff can make a prima facie showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839-40 (10th Cir. 2020) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). The Court will not automatically accept as true the plaintiff's jurisdictional allegations when the defendant contradicts them by affidavit. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Still, "[a]ll factual

disputes are resolved in favor of the plaintiffs when determining the sufficiency of this [prima facie] showing." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

## III.   ANALYSIS

This case invokes the Court's diversity jurisdiction, so the Court applies New Mexico law. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017). "Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Can., Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 48 P.3d 50; *see Fireman's Fund*, 703 F.3d at 492-93. As a result, personal jurisdiction need only be analyzed in the context of constitutional due process.

"Due process requires both that the defendant [1] 'purposefully established minimum contacts within the forum State' and [2] that the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Or said otherwise, "the contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'" *XMission, L.C*, 955 F.3d at 839-40 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### A.   Minimum Contacts

"A defendant's contacts with the forum state can result in either general or specific jurisdiction." *Strong v. Scout Sec.*, No. 21-cv-00418, 2022 WL 266709, at *3 (D.N.M. Jan. 28, 2022). General jurisdiction arises if the defendant's contacts "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Old Republic Ins. Co.*, 877 F.3d at 904

(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation is "at home" in its place of incorporation and principal place of business. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). And an LLC is a citizen of each and every state in which any member is a citizen. *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237-38 (10th Cir. 2015). Specific jurisdiction, by contrast, exists when the "(1) the out-of-state defendant purposefully directed its activities at residents of the forum State, and (2) the plaintiff's alleged injuries arise out of or relate to those activities." *Wirth v. PHC Las Cruces Inc.*, No. 20-cv-01340, 2021 WL 2805357, at *3 (D.N.M. July 6, 2021) (citing *Burger King Corp.*, 471 U.S. at 472); *see Ford Motor Co.*, 141 S. Ct. at 1024.

Jurisdiction over Sterigenics is not in dispute. (Pl.'s Resp. 1, ECF No. 25; Defs.' Mot. 10.) Presumably, the jurisdiction over Sterigenics is specific and not general. After all, Sterigenics's sole member is a citizen of Delaware and Ohio (eliminating general jurisdiction), but Sterigenics operated the sterilization facility in New Mexico that is the subject of this lawsuit (creating specific jurisdiction). (Decl. of Laura Wilson ¶¶ 3, 4, 6, 8, 10.)

This motion asks whether jurisdiction is proper over the Sotera Defendants. General jurisdiction may be quickly eliminated. All three Sotera Defendants are incorporated in Delaware with their principal places of business in Ohio. *See id.* ¶¶ 6, 8, 10; *see also Ford Motor Co*, 141 S. Ct. at 1024; *Siloam Springs Hotel, LLC*, 781 F.3d at 1237-38. Thus, Ms. Vela must establish specific jurisdiction over the Sotera Defendants. Put in doctrinal terms, she must make a prima facie showing that the Sotera Defendants purposefully availed themselves of New Mexico and that the Sotera Defendants' contacts caused or related to Ms. Vela's claims. *See Ford Motor Co*, 141 S. Ct. at 1024.

### 1.    Imputing Contacts for Personal Jurisdiction

In general, "the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." *Berry v. Bryant*, No. 11-cv-00514, 2012 WL 12819204, at *3 (D.N.M. Mar. 12, 2012) (quoting *Alto Eldorado P'ship v. Amrep Corp.*, 2005-NMCA-131, ¶ 32, 124 P.3d 585 (opinion of Kennedy, J.)); *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974) ("[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."). But "[i]n exceptional circumstances, the contacts and activities of a subsidiary may be imputed to the parent company to establish jurisdiction over the parent company." *Wirth*, 2021 WL 2805357, at *2.

Cases from this district cite alter-ego and agency theories as two exceptions to the general rule—that is, theories that impute a domestic subsidiary's forum contacts to the foreign parent company. *See, e.g.*, *Weisler v. Cmty. Health Sys., Inc.*, No. 12-cv-00079, 2012 WL 4498919, at *11 (D.N.M. Sept. 27, 2012).[1] For example, *Jemez Agency, Inc. v. CIGNA Corp.* explained,

> [A] court may properly invoke jurisdiction over a parent corporation predicated upon the acts of its subsidiaries in one of two situations. First, if the parent's control of the subsidiary goes beyond that normally exercised by a majority shareholder, and is "so complete as to render the subsidiary an instrumentality of the parent," the Court may deem the subsidiary the mere "alter ego" of the parent, and accordingly, may pierce the corporate veil. Alternatively, if the subsidiary does an act at the direction of the parent, or in the course of the parent's business, the Court may characterize the subsidiary as an agent of the parent and thereby hold the parent answerable as a principal.

866 F. Supp. 1340, 1343 (D.N.M. 1994) (quoting *Cruttenden v. Mantura*, 1982-NMSC-021, ¶ 8, 640 P.2d 932 (citing *Edgar v. Fred Jones Lincoln Mercury*, 524 F.2d 162, 166 (10th Cir.1975)))

---

[1] Conspiracy is a third exception. *See Alto Eldorado P'ship*, 2005-NMCA-131, ¶ 40 (Sutin, J., specially concurring).

(citing Restatement (Second) of Conflicts of Laws § 562 cmt. b (Am. L. Inst. 1971); *Allen v. Toshiba Corp.*, 599 F. Supp. 381, 389 (D.N.M. 1984)).

Whether a subsidiary is an alter-ego or agent of a parent company is a question of state law. *See Berry*, 2012 WL 12819204, at *4. And the leading New Mexico case on imputing contacts for establishing jurisdiction appears to be *Alto Eldorado Partnership v. Amrep Corp.*, 2005-NMCA-031. The case addressed whether plaintiffs could establish personal jurisdiction over a foreign parent corporation by showing that a domestic subsidiary was the alter ego of the parent.[2] The court held that New Mexico had personal jurisdiction over the foreign parent corporation, but the panel split on why.

Judge Roderick Kennedy wrote the lead opinion. He identified a mismatch between the traditional use of alter-ego and agency theories to prove liability and the use of these theories to establish jurisdiction. *See id.* ¶ 19 (opinion of Kennedy, J.) ("We hold that liability and jurisdiction are different inquiries that focus on different principles and frequently on different bodies of law."). As a result, Judge Kennedy reasoned that the substantive requirements of state corporate law were neither necessary nor sufficient for personal jurisdiction. *See id.* ¶¶ 25-26. He explained,

> [W]e do not require that all of the elements of alter ego be proven in order to hale a foreign corporate parent into court, but we can and will consider whatever elements a plaintiff shows in assessing minimum contacts. "Put simply, separation of formal corporate identities does not impose a constitutional barrier to the exercise of jurisdiction over a non-resident corporation." Rather, we require only what is necessary to establish jurisdiction in any and all cases: the satisfaction of due process.

---

[2] The parties insufficiently addressed agency in *Alto Eldorado Partnership*, so the court did not discuss whether the plaintiffs could impute contacts with an agency theory. *See* 2005-NMCA-131, ¶ 16 (opinion of Kennedy, J.). The court noted, however, that (1) indirectly, "agency principles may be useful to the question of jurisdiction over [the parent corporation]"; (2) agency and alter ego require separate inquiries to establish liability, "but 'it is difficult to see a significant distinction between the two theories for jurisdictional purposes'"; and (3) both theories "often depend on the same type of evidence." *Id.* ¶ 17 (quoting *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1166 (D. Colo. 2003)).

*Id.* ¶ 25 (quoting *Energy Rsrvs. Grp., Inc. v. Superior Oil Co.*, 460 F. Supp. 483, 508 (D. Kan. 1978)). Still, Judge Kennedy would borrow concepts from state corporate law (specifically, alter ego) to show contacts. He continued, "While we might decline to directly superimpose ill-fitting and questionably relevant principles of substantive corporate liability law onto our constitutional jurisdictional inquiry, the relationship between a parent and its subsidiary may be crucial in evaluating jurisdiction itself." *Id.* ¶ 26.

Judge Jonathan Sutin specially concurred. He explained that a plaintiff must satisfy three requisites to pierce the corporate veil for liability: "(1) a showing of instrumentality or domination; (2) a demonstration of improper or fraudulent purpose for incorporation; and (3) proximate causation" *Id.* ¶ 42 (Sutin, J., specially concurring) (quoting *Jemez Agency*, 866 F. Supp. at 1343-44). He suggested that satisfying the first requisite—a showing instrumentality or domination, or "alter ego"—was necessary and sufficient to establish minimum contacts and thus personal jurisdiction. *See id.* ¶¶ 41, 43, 45.[3] And because Judge Sutin thought that the plaintiffs made a prima facie showing of instrumentality, he supported Judge Kennedy's conclusion that the case should not be dismissed for a lack of personal jurisdiction. *See id.* ¶ 47.

Finally, Judge Lynn Pickard dissented. She highlighted that—in contrast to other states' long-arm statutes—New Mexico's long-arm statute does not authorize a court's exercise of jurisdiction over someone who does business "through an instrumentality." *See id.* ¶ 56 (Pickard, J., dissenting) (citing NMSA 1978, § 38-1-16(A) (1971)). Thus, according to Judge Pickard,

---

[3] Judge Sutin described the instrumentality requisite as both necessary and sufficient.
    For necessary: "Plaintiffs were required to make a prima facie showing in the present case of alter ego or agency." 2005-NMCA-131, ¶ 41 (Sutin, J., specially concurring).
    For sufficient: "A prima facie showing of instrumentality or domination should be sufficient to establish the minimum contacts necessary for jurisdiction without also having to prove the improper or fraudulent purpose and proximate causation elements required to establish liability." *Id.* ¶ 43.

merely showing that a subsidiary was the instrumentality (or alter ego) of the parent was not enough for personal jurisdiction. *See id.* ¶¶ 56-58. As a result, Judge Pickard would have held that a showing of all three requisites for piercing the corporate veil—instrumentality or domination, improper purpose, and proximate causation—were necessary to satisfy New Mexico's long-arm statute and establish personal jurisdiction. *See id.* ¶ 60. She concluded that the plaintiffs failed to meet these requisites. *See id.* ¶ 61.

In sum, the three opinions contemplate different relationships between state substantive law and the federal jurisdictional analysis: Judge Kennedy would have held that a showing of instrumentality was informative but neither necessary nor sufficient for personal jurisdiction, Judge Sutin would have held that this showing was both necessary and sufficient, and Judge Pickard would have held that this showing was necessary but not sufficient.

Comity compels the Court to follow Judge Kennedy's approach. Following Judge Sutin's or Judge Pickard's approach—neither of which has been adopted by the New Mexico Supreme Court—would amount to a federal court using state law to limit state authority. At bottom, this motion is about whether New Mexico has the power to exercise jurisdiction over a foreign defendant. If this Court were to impose a state-law requisite on a finding of jurisdiction over a foreign parent company, then the Court would be shrinking New Mexico's jurisdictional reach. The Court thus recognizes, consistent with Judge Kennedy, that Ms. Vela is not required to prove that Sterigenics was the alter-ego or agent of the Sotera Defendants as a condition for establishing personal jurisdiction over the Sotera Defendants. *Id.* ¶ 25 (opinion of Kennedy, J.); *see also Berry*, No. 2012 WL 12819204, at *4.

But this does not obviate the need for state substantive law. As Judge Kennedy highlighted, New Mexico corporate law may still help show that a foreign parent company made enough

contacts with New Mexico to subject it to the State's jurisdiction. *Id.* ¶ 28 ("[D]ue process guided by elements of an alter ego analysis frame our inquiry into the district court's personal jurisdiction over [the foreign parent company]. The question then is not whether corporate law restricts our jurisdiction in contravention of [New Mexico's jurisdictional reach to the limits allowed by the Constitution], but whether due process allows for it."). The Court will thus look to New Mexico law on alter ego and agency as it assesses the Sotera Defendants' contacts with the State.

### 2.    Alter Ego and Agency in New Mexico Law

Start with alter ego. "To find that a subsidiary is the alter ego of the parent corporation, it must be established that the parent control is so complete as to render the subsidiary an instrumentality of the parent." *Cruttenden v. Mantura*, 1982-NMSC-021, ¶ 8, 640 P.2d 932. Courts applying New Mexico law have identified several indicia of alter ego:

> (1) the parent corporation owns all or majority of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; [and] (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Strong*, 2022 WL 266709, at *10 (quoting *Cruttenden v. Mantura*, 1982-NMSC-021, ¶ 8, 640 P.2d 932). "Not all of these guidelines must be met, these are only factors for the trial court to consider in determining whether or not to recognize the corporations as separate entities." *Cruttenden*, 1982-NMSC-021, ¶ 8.

As for agency, "[a]n agent is one authorized by another to act on his behalf and under his control." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 26, 42 P.3d 1221

(quoting *Hansler v. Bass*, 1987-NMCA-106, ¶ 28, 743 P.2d 1031); *see also Carlsberg Mgmt. Co. v. State*, 1993-NMCA-121, ¶ 18, 861 P.2d 288 ("[T]he retention of control by [the principal] and the delegation of specified duties indicates an agency relationship."). A principal is responsible for an agent's torts when the agent acts under either actual or apparent authority. *Romero v. Mervyn's*, 1989-NMSC-081, ¶ 12, 784 P.2d 992. "[A]ctual authority is determined in light of the principal's 'manifestations of consent' to the agent[;] apparent authority arises from the principal's manifestations to third parties." *Id.* (citation omitted). Whether an agency relationship exists is a question of fact. *Santa Fe Techs., Inc.*, 2002-NMCA-030, ¶ 26.

The Court has recited the above principles not because Ms. Vela must prove alter ego or agency to establish jurisdiction, but because the above principles may show the types of contacts that justify the exercise of jurisdiction over a parent company. *See Alto Eldorado P'ship*, 2005-NMCA-131, ¶ 26 (opinion of Kennedy, J.).

### 3.    Contacts that Show Purposeful Availment and that Relate to Ms. Vela's Claims

Ms. Vela proffers facts showing that Sterigenics acted as the alter ego or agent of the Sotera Defendants. (Pl.'s Resp. 5-15 (alter ego), 16-17 (agency).) Rather than considering these facts in a bifurcated discussion of alter ego and agency, the Court considers whether these facts show that the Sotera Defendants had enough contact with New Mexico to subject them to the State's jurisdiction. *See Alto Eldorado P'ship*, 2005-NMCA-131, ¶ 17 (opinion of Kennedy, J.). Because Ms. Vela must rely on specific jurisdiction, the Sotera Defendants' contacts must show purposeful availment and they must relate to Ms. Vela's claims. *See Ford Motor Co.*, 141 S. Ct. at 1024-25.

#### a.  Sole Ownership

Ms. Vela highlights that Sotera Health owns all of Sterigenics's capital stock. Indeed, Sotera Health is the sole member of Holdings LLC. Holdings LLC is the sole member of Health

LLC. And Health LLC is the sole member of Sterigenics. (Decl. of Laura Wilson ¶¶ 5, 7, 9.) This fact alone would not establish jurisdiction. *See, e.g.*, *Strong*, 2022 WL 266709, at *10 ("[T]he ownership by one corporation of all or a majority of the stock of the other, or that the corporations have common officers and directors, or both, is not sufficient." (alteration in original) (quoting *Scott v. AZL Res., Inc.*, 1988-NMSC-028, ¶ 8, 753 P.2d 897)).

### b.   The Sotera Defendants' Relationship to Sterigenics's President

Ms. Vela asserts that Sotera Health has a common director or officer with Sterigenics and Health LLC. Specifically, she cites Sotera Health's SEC filings that list Sterigenics's president, Michael Rutz, as a "Named Executive Officer." (2023 Proxy Statement 27, Pl.'s Ex. A, ECF No. 25-1; 2020 SEC Form S-1, at 122, Pl.'s Ex. B, ECF No. 25-2.) Sotera Health's proxy statement states that Mr. Rutz's employment agreement is with Health LLC. (2023 Proxy Statement 51.)

The Sotera Defendants respond with SEC regulations to show that being identified as a Named Executive Officer in a parent company's SEC filings does not equate to being a named officer of that parent company. (Defs.' Reply 6, ECF No. 26 (citing, for example, 17 C.F.R. § 229.402(a)(3) (2023), at Instruction 2 to Item 402(a)(3) ("It may be appropriate for a registrant to include as named executive officers one or more executive officers or other employees of subsidiaries in the disclosure required by this Item.").) Thus, the Sotera Defendants have shown that Sotera Health's proxy statement does not prove that Sterigenics's president is also a named officer of Sotera Health. Still, the Court will consider the relationship between the Sotera Defendants and Sterigenics's president.

Sotera Health's proxy statement describes how annual cash incentive opportunities "were tied to (i) the Company's achievement of financial performance goals (and Sterigenics financial performance goals, in Mr. Rutz's case) . . . , and (ii) individual performance." (Proxy Statement

36.) The proxy statement continues, "Mr. Rutz's bonus was determined by taking into account the performance of both the Company and Sterigenics (80% of award, with Sterigenics performance having a 75% weighting and Company performance a 25% weighting), and his individual performance (20% of award)." (*Id.*)

What is more, the proxy statement explains one of the principles underlying this incentive structure: "The majority of executives' compensation is contingent, rather than fixed, and subject to variability commensurate with Company and individual performance. We set challenging financial and operational performance goals designed to build sustainable long-term shareholder value, *while embedding into individual performance goals objectives that advance the Company's values*." (*Id.* at 28.)

Stepping back, the Sotera Defendants' relationship with and control over Sterigenics begins to resemble forum contacts in New Mexico. Because of the Sotera Defendants' chain of sole membership, Sotera Health had the ability—without risk of dissent from other members—to influence Health LLC's employment agreement with Sterigenics's president. Indeed, Sotera Health told its shareholders, by way of its proxy statement, that it compensated executives to "advance the Company's values." And Sterigenics's president, in turn, presumably had the power to make decisions that affected a facility in New Mexico.

These conclusions are in some tension with the Sotera Defendants' declaration. Specifically, a corporate paralegal for the Sotera Defendants attested, "The Sotera Defendants do not control . . . how [the individuals who work at the Santa Teresa facility] perform their work." (Decl. of Laura Wilson ¶ 17.) But because "[a]ll factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of [a plaintiff's prima facie jurisdictional] showing,"

the Court finds that Ms. Vela has made a prima facie case that Sotera Health compensated Sterigenics' president to influence his decisions. *Rusakiewicz*, 556 F.3d at 1100.

To be sure, these facts alone would not establish jurisdiction over the Sotera Defendants. *See Jemez Agency*, 866 F. Supp. at 1344. Still, they begin to move the needle. For example, when this Court granted a motion to dismiss for a lack of personal jurisdiction in *Berry v. Bryant*, the Court highlighted that the plaintiff failed to show "that [the subsidiary's] executives take direction from the parent." 2012 WL 12819204, at *5.

> c. *SEC Filings: Investment in Emissions Controls, Offer of Services, Operation of Facilities, and Oversight of Risks and Litigation*

Ms. Vela points to statements in Sotera Health's SEC filings:

- "Our capital expenditure program is a component of our long-term strategy. . . . In 2021, we expect to continue to invest in our supply relationships . . . *including enhancements to our emissions controls* in anticipation of changes to environmental requirements." (2020 SEC Form S-1, at 78 (emphasis added).)

- "Under our Sterigenics brand, we provide outsourced terminal sterilization and irradiation services for the medical device, pharmaceutical, food safety and advanced applications markets. . . . We offer our customers a complete range of outsourced terminal sterilization services, primarily using the three major sterilization technologies: gamma irradiation, *EO processing* and E-beam irradiation." (*Id.* at 91 (emphasis added).)

- "As of August 31, 2020, we operated 63 facilities in North America, South America, Europe and Asia." The filing then included a chart that associated Sterigenics with 48 facilities. (*Id.* at 115.)

- In the 2023 proxy statement, the attestation that the Sotera Health engages in "comprehensive Board oversight of EO (ethelyne oxide) risks and litigation." (2023 Proxy Statement, at 5.)

The Sotera Defendants claim that these statements do not help Ms. Vela for two reasons. First, Sotera Health made these statements after Ms. Vela's mother passed away. Thus, according to the Sotera Defendants, the filings "are irrelevant to a determination of personal jurisdiction for a suit based on events taking place long before April 2020." (Defs.' Reply 4.)

It is true that the statements' timing weakens their probative value. Still, they remain relevant to the jurisdictional inquiry. The fact that Sotera Health stated in 2020 and 2023 that it planned to *continue* to invest in enhancements to emissions controls, offered sterilization services through EO processing, operated Sterigenics facilities, and engaged in comprehensive oversight of EO risks makes it more likely than in the absence of these statements that Sotera Health took these actions before 2020.

The Sotera Defendants' second issue with Ms. Vela's citation to the SEC filings is that Sotera Health stated that its use of "we" and "our" was inclusive of its subsidiaries. In the 2020 filing quoted above, Sotera Health included the following disclaimer: "[U]nless we indicate otherwise or the context requires, 'Sotera Health,' 'Sotera Health Company,' 'our company,' 'the company,' 'we,' 'our,' 'ours' and 'us' refer to Sotera Health Company *and its consolidated subsidiaries*." (2020 SEC Form S-1, at 1 (emphasis added), available at https://www.sec.gov /Archives/edgar/data/1822479/000119312520275568/d93452ds1.htm.)   Thus,   the   Sotera Defendants suggest, because "we" could refer to subsidiaries, the statements that use "we" are not admissions that Sotera Health was responsible for the actions in those statements.

Further, the Sotera Defendants cite several cases analyzing similar SEC statements with similar disclaimers for the principle that "[g]eneral references by a parent corporation to the business of its subsidiary as being part of the business of the parent does not serve to erase the substantive and legal distinction between corporations." (Defs.' Reply 5 & n.3 (quoting *Berry*, 2012 WL 12819204, at *5) (citing *Weisler*, 2012 WL 4498919, at *5; *Quimbey by Faure v. Cmty. Health Sys., Inc.*, No. 14-cv-00559, 2015 WL 13651236, at *2 (D.N.M. Sept. 22, 2015); *Lucero v. Carlsbad Med. Ctr., LLC*, No. 18-cv-00148, 2018 WL 3209406, at * 4 (D.N.M. June 29, 2018); *Moody v. Charming Shoppes of Del., Inc.*, No. C 07-cv-06073 MHP, 2008 WL 2128955, at *4 (N.D. Cal. May 20, 2008)).)

Consistent with these cases, the Court does *not* hold that the statements in these SEC filings erase the legal distinctions among the Sotera Defendants and Sterigenics. Or put differently, the statements do not make Sterigenics the alter ego of the Sotera Defendants.

The statements do, however, show that Sotera Health purposefully directed it activities at New Mexico. The statements (simplified here) "we invest in emissions controls," "we offer sterilization services using EO processing," "we operate facilities," and "we oversee EO risks and litigation" link Sotera Health to the Santa Teresa facility. What is more, the statements are not just generic descriptions of corporate structure. On the contrary, these statements describe contacts that relate to Ms. Vela's claims of wrongful death caused by EO emissions. (Compl. ¶ 41.)

True enough, these statements conflict with the Sotera Defendants' declaration. The declaration affirms, for example, "The Sotera Defendants do not own or operate any facility in New Mexico . . . ," and "The Sotera Defendants do not sterilize medical equipment or use ethylene oxide at [the Santa Teresa facility]." (Decl. of Laura Wilson ¶¶ 13, 14.) A possible resolution for this conflict is that the statement in the SEC filing, "we operate facilities," could mean "Sotera

Health's subsidiaries but not Sotera Health operate facilities." Similarly, one might read the statement in the SEC filing, "we offer sterilization services using EO processing," as "Sotera Health's subsidiaries but not Sotera Health offer sterilization services using EO processing."

One problem with this resolution is that it contravenes the disclaimer. The disclaimer says that the use of "we" "refer[s] to Sotera Health Company *and* its consolidated subsidiaries." (2020 SEC Form S-1, at 1 (emphasis added).) And the conjunctive rather than disjunctive form means that Sotera Health must always be a referent of "we." Thus, the phrase, "we operate facilities," could mean "Sotera Health *and* its consolidated subsidiaries operate facilities," but the phrase could not mean "Sotera Health *or* its consolidated subsidiaries operate facilities." This eliminates the reading, "Sotera Health's subsidiaries *but not* Sotera Health operate facilities." *See Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 930 & n.9 (S.D. Cal. 2022) (considering the use of conjunction rather than disjunction in similar disclaimer before relying on SEC filing to find that parent company purposefully directed its activities toward forum).

In addition, the Sotera Defendants have not cited a similar disclaimer that defines "we," "our," and "us" in the 2023 Proxy Statement. (Defs.' Reply 5 & n.2.) Thus, the statement that Sotera Health engages in "comprehensive Board oversight of EO risks and litigation" does not mean that a subsidiary is overseeing EO risks and litigation. (2023 Proxy Statement, at 5.)

Most importantly, any resolution between the SEC filing statements and the Sotera Defendants' declaration is best reserved for a later stage in this litigation. For now, Ms. Vela's citation to SEC filings is enough to create a factual dispute about Sotera Health's involvement in the investment in emissions controls, offer of sterilization services using EO processing, operation of facilities, and oversight of EO risks and litigation. Because factual disputes must be resolved in Ms. Vela's favor, *see Rusakiewicz*, 556 F.3d at 1100, the Court finds that the SEC statements help

16

show that Sotera Health purposefully directed its activities toward New Mexico and that those activities related to Ms. Vela's claims.

To be sure, the SEC filings, standing alone, are not enough to establish jurisdiction over the Sotera Defendants. *See, e.g.*, *Lucero*, 2018 WL 3209406, at *4; *Berry*, 2012 WL 12819204, at *5. Nor (to repeat) do the filings show that Sterigenics acted as the alter ego of the Sotera Defendants. But the filings help show that Sotera Health had contacts with New Mexico that relate to Ms. Vela's claims. Indeed, other cases denying motions to dismiss for lack of personal jurisdiction have relied on SEC filings. *See, e.g.*, *Chien*, 641 F. Supp. 3d at 930; *Romero v. TitleMax of N.M., Inc.*, No. 17-cv-00775, 2020 WL 4547294, at *4 (D.N.M. Aug. 6, 2020); *In re Genetically Modified Rice Litigation*, 576 F. Supp. 2d 1063, 1068 1074 (E.D. Mo. 2008).

### d.  Guaranteeing Settlement Payment

Ms. Vela next references a letter from Sotera Health's CEO in Sotera Health's 2022 Annual Report. (2022 Annual Report, at PDF p. 3, Pl.'s Ex. C, ECF No. 25-3.) The letter states that Sotera Health executed a $500 million loan to fund "the $408M Illinois ethylene oxide ("EO") litigation settlement." (*Id.*) A later section of the annual report provides that Sterigenics and Health LLC were the defendants in this litigation and entered the settlement agreement. (*Id.* at 112-13.)

The Sotera Defendants raise two issues with Ms. Vela's reference to the settlement. First, the settlement postdates Ms. Vela's mother's death. As with the statements in the SEC filings, however, the fact that Sotera Health executed a loan in 2022 makes it more likely than in the absence of this fact that Sotera Health provided a safety net for Sterigenics before 2020.

Second, the Sotera Defendants cite to the settlement agreement, which says that Sterigenics "shall pay or cause to be paid the Settlement Funds." (Defs.' Reply 9 (citing Settlement Agreement ¶ 4.2, available at https://www.sec.gov/Archives/edgar/data/1822479

/000182247923000033/shc_20230331xexhibitx10x2.htm).)   The  settlement  agreement  then

describes Sotera Health's involvement:

> [Sotera Health] agrees to be guarantor of [Sterigenics's] obligation to [pay the
> settlement funds]. [Sotera Health's] agreement to serve as guarantor of
> [Sterigenics's] obligation to pay the Settlement Funds to the Escrow Account does
> not constitute an admission of liability or responsibility as a parent company or
> otherwise for the actions of [Sterigenics] or any other subsidiary with respect to any
> of the Claims or any other claim.

(*Id.* (citing Settlement  Agreement ¶ 4.3).)  The  Sotera  Defendants  then  note  that  arranging

financing and serving as a guarantor does not erase the legal distinctions between a parent company

and its subsidiary. (*Id.* at 10 (citing, for example, *United States v. Bliss*, 108 F.R.D. 127, 132 (E.D.

Mo. 1985)).)

The  Court  agrees  that  Sotera  Health's  role  as  Sterigenics's  guarantor  does  not  render

Sterigenics the alter ego of Sotera Health. Still, Ms. Vela's proffer of the settlement loan suggests

(when all factual disputes are resolved in her favor, *see Rusakiewicz*, 556 F.3d at 1100) that Sotera

Health was willing to assume Sterigenics's liability, which may have affected Sterigenics's actions

in New Mexico. In sum, this evidence moves the needle, even if just slightly.

### e.  *Certificates*

Finally, Ms. Vela cites to certificates issued by a third party, BSI. (BSI Certificates, Pl.'s

Exs. G to J, ECF Nos. 25-7 to -10.) The parties do not explain BSI's identity. And although the

Sotera Defendants dispute the certificates' significance, the Sotera Defendants do not question the

certificates' legitimacy. (Defs.' Reply 7.)

The  first  three  certificates  affirm  that  "Health LLC . . . operates a Quality Management

System which complies with the requirements of [a regulation or standard] for the following scope:

The provision of ethylene oxide and radiation sterilization services . . . ." (BSI Certificates, Pl.'s

Exs. G to I.) These three certificates then list the Santa Teresa facility next to a registered activity.

The registered activities in the three certificates are, "The provision of ethylene oxide sterilization services in accordance with [a standard or regulation]," "The provision of ethylene oxide sterilization services fulfilling applicable quality management system requirements within [a standard or regulation]," and "Contract Ethylene Oxide Sterilization." (*Id.*) The fourth certificate affirms that Health LLC "provides sterilization services at some or all of the certified locations" and lists the Santa Teresa facility as a certified location. (BSI Certificate, Pl.'s Ex. J.)

The parties do not explain the regulations or standards that Health LLC is certified as complying with in the certificates. Still, the certificates' plain language suggests that Health LLC purposefully conducted activities in New Mexico. And those activities relate to Ms. Vela's claims. As with Ms. Vela's other jurisdictional facts, however, the certificates are in tension with the Sotera Defendants' declaration: "The Sotera Defendants do not own or operate any facility in New Mexico . . . ," and "The Sotera Defendants do not sterilize medical equipment or use ethylene oxide at [the Santa Teresa facility]." (Decl. of Laura Wilson ¶¶ 13, 14.)

At this stage in the litigation, the combination of the strong language in the certificates (for example, "Health LLC . . . operates a Quality Management System" and "Health LLC . . .provides sterilization services") and the uncertainty around the certificates' affirmations cuts for denying the Sotera Defendants' motion to dismiss. Said otherwise, the Court finds that the certificates create a factual dispute over Health LLC's role in the operation and provision of sterilization services. Because factual disputes must be resolved in Ms. Vela's favor, *see Rusakiewicz*, 556 F.3d at 1100, the Court finds that the certificates help show that Health LLC purposefully directed its conduct at New Mexico and that this conduct related to Ms. Vela's claims. But the Court reserves

the possibility of treating the certificates differently at a later stage in this litigation, especially once the Court is better informed about the certificates' meaning.[4]

### 4.    Conclusion to Analysis of Minimum Contacts

Each of Ms. Vela's proffered facts might—if considered alone—be insufficient to establish jurisdiction. But when the Court considers the sum of the facts, Ms. Vela has made a prima facie showing that the Sotera Defendants purposefully directed their actions toward New Mexico such that exercising jurisdiction over the Sotera Defendants comports with due process.

It is worth emphasizing two limitations to the Court's holding. First, the Court says nothing as to liability. Nothing should be construed as a holding (one way or the other) that Sterigenics was the agent or alter ego of the Sotera Defendants, such that the Sotera Defendants are liable for Sterigenics's actions in New Mexico. After all, "liability and jurisdiction are different inquiries that focus on different principles and frequently on different bodies of law." *Alto v. Eldorado P'ship*, 2005-NMCA-131, ¶ 19 (opinion of Kennedy, J.).

Second, the Court's holding reflects the legal standard at this stage in the litigation. Ms. Vela's burden to establish jurisdiction was "light." *AST Sports Sci., Inc.*, 514 F.3d at 1056-57. She needed only to make "prima facie showing of personal jurisdiction," which she has done. *Id.* If the Sotera Defendants were to renew their motion at trial, Ms. Vela would need to prove personal jurisdiction by a preponderance of the evidence. *See Racher v. Lusk*, 674 F. App'x 787, 789 (10th Cir. 2016). The Court's current holding should not be taken as an indication (one way or the other) of how the Court would apply that different standard.

---

[4] The Sotera Defendants emphasize that only Health LLC—not Holdings LLC and not Sotera Health—holds the certificates. (Defs.' Reply 7.) Because the Sotera Defendants moved to dismiss together—and Ms. Vela responded accordingly by treating all three together—the Court will not separately analyze personal jurisdiction for each Sotera Defendant at this stage in the litigation.

### B.      Fair Play and Substantial Justice

"When a plaintiff satisfies its minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless 'offend traditional notions of fair play and substantial justice.'" *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008)). There are five considerations:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* (citing *OMI Holdings, Inc.*, 149 F.3d at 1095).

### 1.      Defendant's Burden

As Ms. Vela acknowledges, the Sotera Defendants have their principal places of business in Ohio. Thus, litigation in New Mexico will impose some burden. But Ms. Vela then cites to Doña Ana County tax records that show Holdings LLC as one of the owners of the Santa Teresa facility. (Doña Ana County Tax Rolls, Defs.' Ex. C, ECF No. 21-1.) Ms. Vela claims that "[i]t should not be excessively burdensome for Holdings LLC to litigate in a forum where it ostensibly owns property and maintains an address." (Pl.'s Resp. 18.)

The citation to the tax records conflicts with the Sotera Defendants' declaration: "The Sotera Defendants do not own or operate any facility in New Mexico, including the Facility." (Decl. of Laura Wilson ¶ 13.) But the Sotera Defendants did not resolve this conflict or explain Holdings LLC's presence in the tax records in their reply brief. Thus, the Court agrees with Ms. Vela that it is not excessively burdensome for Holdings LLC to litigate in New Mexico.

Moreover, "'defending a suit in a foreign jurisdiction is not as burdensome as in the past,' especially for sophisticated parties." *Romero*, 2020 WL 4547294, at *6 (quoting *Cont'l Am. Corp.*

*v. Camara Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982)). Indeed, the Sotera Defendants have already retained the same counsel as Sterigenics, which lessens their burden. *See id.*

### 2. Forum State's Interest in Resolving the Dispute

New Mexico has an interest in resolving ethylene oxide litigation. Indeed, Ms. Vela directs the Court to a lawsuit against Sterigenics and the Sotera Defendants that was filed by the State of New Mexico. *See* Docket Sheet, *State of New Mexico v. Sterigenics*, No. D-307-cv-2020-02629 (3d Jud. Dist. Ct. filed Dec. 22, 2020).

In addition, "New Mexico has an interest in resolving disputes involving its residents, particularly where the dispute involves the application of New Mexico law." *Romero*, 2020 WL 4547294, at *6 (citing *OMI Holdings, Inc.*, 149 F.3d at 1096 ("The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law."); *AST Sports Sci., Inc.*, 514 F.3d at 1062 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.")).

### 3. Plaintiff's Interest in Convenient and Effective Relief

Ms. Vela lives in New Mexico, so litigating in this District advances her interest in convenient and effective relief.

### 4. Interstate Judicial System's Interest in Efficient Resolution

Here, "[t]he key points to consider when evaluating this factor are 'the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.'" *Id.* at *7 (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1281 (10th Cir. 2005)). Witnesses and evidence are most likely to be in New Mexico. The alleged harms in this case arose from emissions from a facility in Santa Teresa, New Mexico. New Mexico law governs this case. And jurisdiction

is necessary to prevent piecemeal litigation—otherwise, this Court would retain jurisdiction over Sterigenics, while another district would exercise jurisdiction over the Sotera Defendants.

   **5.**  **Several States' Shared Interest in Furthering Fundamental Substantive Social Policies**

   "[T]his factor focuses on whether the exercise of personal jurisdiction by a New Mexico court affects the substantive social policy interests of other states." *Id.* (citing *OMI Holdings, Inc.*, 149 F.3d at 1097). This case involves New Mexico law and New Mexico residents, so the exercise of personal jurisdiction in New Mexico will not affect other states' policy interests. *See id.*

   **6.**  **Conclusion to Analysis of Fair Play and Substantial Justice**

   Having considered the five factors above, the Court concludes that exercising jurisdiction over the Sotera Defendants would not offend traditional notions of fair play and substantial justice.

## IV. CONCLUSION

   Ms. Vela has made a prima facie showing that the Court's exercise of jurisdiction over the Sotera Defendants comports with due process. **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that *Defendants Sotera Health LLC, Sotera Health Holdings, LLC, and Sotera Health Company's Motion to Dismiss Under FRCP 12(b)(2)* (**ECF No. 21**) is **DENIED**.


                _____
                SENIOR UNITED STATES DISTRICT JUDGE